MARY SCHAEFER v. LUCY SCHOENBORN.[1]

May 12, 1905.

Nos. 14,263—(54).

**Unauthorized Stipulation of Attorney.**

Where, in dismissing an action by stipulation,. the attorney does not assume to act by virtue of the general authority implied by his employment, but proceeds upon the mistaken assumption that express authority had been conferred upon him, his client is not necessarily bound thereby, but may within a reasonable time repudiate the stipulation and have the cause reinstated. A motion to that effect is directed to the sound discretion of the court.

Appeal by plaintiff from an order of the district court for Wilkin county, Flaherty, J., denying a motion to vacate a stipulation for a

[1] Reported 103 N. W. 501.

dismissal of the action previously entered into by the attorneys of rec-. ord of the respective parties. Reversed.

R. J. *Wells* and *Purcell, Bradley & Divet,* for appellant.

*Lewis E. Jones* and *Jones & King,* for respondent.

LEWIS, J.

Action for slander, in which Robert J. Wells, of Breckenridge, Minnesota, appeared as attorney of record for plaintiff, and Messrs. Purcell, Bradley & Divet, of Wahpeton, North Dakota, as counsel. After issue had been joined, August 9, 1904, a stipulation was entered into between the attorney of record and defendant's attorney dismissing the action upon the merits. Immediately upon learning of the stipulation for dismissal, and within ten days thereafter, plaintiff made application to the district court for an order vacating and setting it aside. The motion was heard September 14, and plaintiff appeals from an order denying the motion.

From the notice of motion, and from the affidavits read upon the hearing, it conclusively appears that the stipulation was entered into by the attorney of record without plaintiff's knowledge; that her principal counsel were Messrs. Purcell, Bradley & Divet. From plaintiff's affidavit it appears that August 8 and 9, 1904, she was absent from Breckenridge, her place of residence, and had been away for about three weeks; that on or about August 21 she returned, and learned of the fact that her case had been settled by dismissal, whereupon she called on Mr. Purcell, and was informed by him that the attorney of record, Mr. Wells, had reported to the firm that the settlement was satisfactory to plaintiff; that she at once disclaimed the settlement, and denied she had ever authorized or instructed such settlement to be made on her behalf; that she never received any part of the $100 paid Mr. Wells in consideration of the settlement. Affidavits of Mr. Wells were read at the hearing, from which it appears that he was acting as attorney of record in the action, and received his appointment to appear for plaintiff through the firm of Purcell, Bradley & Divet; that he entered into the stipulation for settlement in consideration of the payment of $100 as attorney's fees for plaintiff's attorneys, and at the time of making the stipulation he had never received any authority from plaintiff personally so to do; that August 9 defendant's attorney

came to his office, at Breckenridge, and offered $100 in settlement of the case. Mr. Wells stated to the attorney that it was not his case; that he would submit the proposition to Mr. Purcell, and ascertain what he had to say about it, whereupon he called up Mr. Purcell's firm by phone, and, finding Mr. Purcell away, talked with Mr. Divet, stating to him the proposed settlement, and told Mr. Divet that at the time plaintiff signed the complaint she asked to have the clause relative to money damages stricken out, as she did not want the money, and only desired to stop the talk about her; that Mr. Wells understood Mr. Divet to say that the terms would be satisfactory, and thereupon he entered into the stipulation; and that in the conversation Mr. Divet said that it was his understanding that plaintiff did not want any money, but only that her character might be vindicated, and, so far as their firm was concerned, a settlement that way would be perfectly satisfactory. Mr. Divet, in his affidavit, stated that, in the conversation over the telephone with Mr. Wells, he did not intend to authorize any judgment, settlement, or dismissal of the action, but was acting solely upon the understanding and belief that the proposed adjustment or settlement was plaintiff's wish, and did not do more or otherwise than to acquiesce in a settlement which, he understood from the conversation, had already been agreed upon by plaintiff. A counter affidavit on the part of defendant was read at the hearing, to the effect that she paid Mr. Wells $100 in full settlement, and at the same time delivered to him a statement to the effect that she retracted any and all derogatory statements theretofore made by her, if any, of or concerning plaintiff; that she acknowledged her error in uttering such statements, if she did so, and declared plaintiff to be a woman of good character and above reproach. It was stated in plaintiff's affidavit that upon a former occasion defendant had made similar retraction, but that she had ignored the same, and had reiterated the slanderous charges set forth in the complaint.

From the papers presented to the trial court, it appears that Mr. Wells was not assuming to act by virtue of the authority conferred upon him as the attorney of record for the plaintiff, and we need not, therefore, consider what were his powers in effecting a settlement under such general authority; but it conclusively appears that Mr. Wells assumed, from the previous conversation with plaintiff in re-

spect to demand for compensation in money, that she would be entirely satisfied, and would authorize a settlement, provided her character, which had been maligned, was vindicated, and that he had assumed to enter into the stipulation with the understanding that such an arrangement would be satisfactory to plaintiff, and the object of calling upon the other attorneys for plaintiff, and discussing the matter with them, was to inform them of the nature of the stipulation entered into. The conclusion seems unavoidable that Mr. Wells was mistaken in assuming that he had express authority to effect such settlement, and it is unquestioned that such consent as Mr. Divet may have given on behalf of himself and his firm was upon a misapprehension of the facts. Such consent was evidently given upon the theory that Mr. Wells had received express authority from plaintiff to make settlement in the manner in which he did.

The affidavits read on behalf of defendant, which were directed to the merits of the case, in opposition to the motion, were entirely irrelevant, and should not have been taken into consideration. The question before the court was not upon the merits of the case, nor was it a question of the sufficiency of the pleadings. The motion papers and supporting affidavits presented simply one question—whether the stipulation should be set aside for the reason that it had been entered into under a misapprehension of the facts and was without authority. We think it conclusively appears that it was, and that the order should have been granted.

Order reversed.